**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

**GENIE HOBBS,**

**Plaintiff,**

**v.**

**JIMMIE LEE MACE, *et al.*,**

**Defendants.**

**CIVIL ACTION NO. 5:21-cv-62 (MTT)**

## ORDER

This diversity case results from a collision between a vehicle, in which Plaintiff Genie Hobbs was a passenger, and a motor grader operated by Defendant Jimmie Lee Mace, an employee of Defendant Houston County, Georgia. Docs. 1; 6 ¶¶ 2, 4. Mace and the County now move for summary judgment. Doc. 18. For the following reasons, that motion (Doc. 18) is **GRANTED in part** and **DENIED in part**.

## I. BACKGROUND

The facts of this case are straightforward and undisputed.[1] While employed by Houston County on February 22, 2019, Mace was operating a motor grader owned by the County on Georgia State Road 7. Doc. 18-1 ¶ 1. The motor grader travelled well below the posted speed limit of 55 MPH. *Id.* ¶ 4. Consequently, a line of cars formed behind the motor grader; Hobbs was a passenger in one of those vehicles. *Id.* ¶¶ 5, 11-

[1] Hobbs, "[f]or the sake of brevity," adopts and reincorporates the defendants' statement of undisputed facts. Doc. 20 at 1. Accordingly, these facts are drawn primarily from the defendants' Statement of Material Facts (Doc. 18-1), but only insofar as the defendants' facts are adequately supported by specific citations to the record. *See* Fed. R. Civ. P. 56(e)(2)-(3); *see also* M.D. Ga. L.R. 56.

12. Not wanting to "tie up a heap of traffic," Mace decided to move the motor grader off the road to allow the cars to pass. *Id.* ¶¶ 6-7, 9. At the first opportunity to do so, Mace decided to turn left off the road and into a driveway. *Id.* ¶¶ 6, 10. As Mace was making the turn, Hobbs's vehicle attempted to pass the motor grader on its left. *Id.* ¶¶ 10-12. The vehicles collided; Mace's motor grader struck the right side of Hobbs's vehicle. *Id.* ¶ 12. Prior to the incident, the County had entered into a coverage agreement with the Association County Commissioners of Georgia - Interlocal Risk Management Agency ("ACCG-IRMA"), which provides coverage that is "akin to insurance." Docs. 18-1 ¶ 19; 18-5.

Based on the diversity of the parties, Hobbs filed this action on February 18, 2021 asserting claims against Mace and the County. Doc. 1. Before filing an answer, the defendants moved to dismiss based on various theories of sovereign immunity. Doc. 4. Hobbs opposed the motion. Doc. 5. Rather than wait for the Court to rule on the defendants' motion to dismiss, the parties entered into a stipulation, whereby the defendants withdrew their motion to dismiss, Hobbs dismissed some claims against the County, and the parties agreed the defendants could reassert their defenses by a dispositive motion later in the case. Doc. 6 ¶¶ 4-8. The only remaining claims are (1) Hobbs's negligence and negligence per se claims against Mace; and (2) Hobbs's *respondeat superior* claim against the County. *Id.* ¶ 8.

The defendants now move for summary judgment.[2] Doc. 18. In their motion, the defendants argue that Hobbs's claims against Mace are barred by official immunity, and

[2] The day after the defendants moved for summary judgment, Hobbs moved for voluntary dismissal pursuant to Federal Rule of Civil Procedure 41(a)(2). Doc. 19. Hobbs's motion for voluntary dismissal was ambiguous. *See id.* On the one hand, Hobbs filed what she said was a straightforward motion for dismissal without prejudice. *Id.* But when it came to relief sought, Hobbs suggested her motion was

Hobbs's claims against the County are barred by sovereign immunity.  Doc. 18-2.  Specifically, Mace argues he was performing a discretionary act rather than a ministerial act, and thus is entitled to official immunity.  *Id.* at 3-7.  Houston County argues that any waiver of its sovereign immunity applies exclusively to actions brought in state court.[3]  *Id.* at 7-13.

## II. STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute is not genuine unless, based on the evidence presented, "a reasonable jury could return a verdict for the nonmoving party."  *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (internal citation omitted); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The movant may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those

---

somehow contingent upon the Court's ruling on issues raised in the defendants' motion for summary judgment.  *Id.* at 3-4.  The Court construed Hobbs's motion for voluntary dismissal as a straightforward motion pursuant to Rule 41(a)(2), and instructed Hobbs that if she disagreed, she should respond accordingly.  Doc. 23.  In response, Hobbs moved to withdraw her motion for voluntary dismissal and requested the Court rule on the defendants' motion for summary judgment.  Doc. 24.  Hobbs's motion to withdraw (Doc. 24) is **GRANTED**.  Accordingly, Hobbs's motion for voluntary dismissal (Doc. 19) is **TERMINATED**.

[3] Initially, the County contended that because "there is no evidence that Houston County secured traditional insurance," but rather entered into a coverage agreement through the ACCG-IRMA, "the waiver of sovereign immunity for the purchase of 'insurance' that is afforded by O.C.G.A. § 33-24-51 does not apply to the claim Plaintiff is asserting against Houston County."  Doc. 18-2 at 12.  But in their reply, the County concedes that the "Supreme Court of Georgia has held that a coverage agreement similar to the coverage agreement that Houston County entered into with ACCG-IRMA constitutes insurance," and thus, "in certain instances, an ACCG-IRMA coverage agreement can waive the sovereign immunity otherwise afforded to a county."  Doc. 22 at 7 (citing *Gilbert v. Richardson*, 264 Ga. 744, 751-52, 452 S.E.2d 476, 482 (1994)).  In other words, the County concedes the coverage agreement (Doc. 18-5) constitutes "insurance" for the purposes of O.C.G.A. § 33-24-51.

made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).  "When the *nonmoving* party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material *negating* the opponent's claim[]' in order to discharge this 'initial responsibility.'" *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437-38 (11th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  Rather, "the moving party simply may 'show[ ]—that is, point[ ] out to the district court—that there is an absence of evidence to support the nonmoving party's case.'" *Id.* at 1438 (alterations in original) (quoting *Celotex*, 477 U.S. at 324).  Alternatively, the movant may provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *Id.*

The burden then shifts to the non-moving party, who must rebut the movant's showing "by producing … relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex*, 477 U.S. at 324).  The non-moving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable, or is not significantly probative' of a disputed fact." *Id.* (quoting *Anderson*, 477 U.S. at 249-50).  Further, where a party fails to address another party's assertion of fact as required by Fed. R. Civ. P. 56(c), the Court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).  However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge …. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

## III. DISCUSSION

### A. Mace is Entitled to Official Immunity

Mace contends Hobbs's claims against him are barred by official immunity. Doc. 18-2 at 3-7. "Individual government employees are shielded by official immunity from damages suits unless the plaintiff can establish that the official negligently performed a ministerial act or performed a discretionary act with malice or an intent to injure." *Glass v. Gates*, 311 Ga. App. 563, 574, 716 S.E.2d 611, 621 (2011), *aff'd,* 291 Ga. 350, 729 S.E.2d 361 (2012) (citing *Grammens v. Dollar*, 287 Ga. 618, 619, 697 S.E.2d 775 (2010)). Here, the parties agree that Mace did not act with malice or intent to injure Hobbs. *See* Doc. 18-1. Accordingly, "the determination of whether official immunity bars the suit against [Mace] turns on the issue of whether [Mace's] actions were discretionary or ministerial." *Barnett v. Caldwell*, 302 Ga. 845, 848, 809 S.E.2d 813, 816 (2018).

Mace argues his decision to move the motor grader off the road was discretionary; Hobbs contends it was a ministerial act.[4] Docs. 18-2 at 3-7; 20 at 2-3. A ministerial act is "commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty." *Barnett*, 302 Ga. at 848, 809 S.E.2d at 816 (internal citation omitted). "A ministerial duty may be established by evidence such as a written policy, an unwritten policy, a supervisor's specific directive, or a statute." *Wyno v. Lowndes Cnty.*, 305 Ga.

---

[4] In response to Mace's argument that the claims against him are barred by official immunity, Hobbs also points to O.C.G.A. § 33-24-51, arguing that the statute "does not proscribe naming a 'local government officer or employee' as a defendant." Doc. 20 at 2 (citing Doc. 5 at 2). True, but that proves nothing. O.C.G.A. § 33-24-51(b) addresses only governmental entities and waives their "governmental immunity" to the extent of the insurance they purchase. Nothing in the statute waives the official immunity of employees of governmental entities.

523, 527-28, 824 S.E.2d 297, 302 (2019).  "A discretionary act, on the other hand, calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed."  *Barnett*, 302 Ga. at 848, 809 S.E.2d at 816.

Hobbs cites O.C.G.A § 40-6-42(2), Georgia's overtaking and passing statute, for the proposition that Mace had a ministerial duty to avoid colliding with her vehicle.  Doc. 20 at 3.  That's a novel and unrealistic take on the Georgia traffic code.  While O.C.G.A. § 40-6-42(2) regulates improper passing, the statute does not impose an "absolute duty on a [motor grader] driver to avoid a collision."  *Rios v. Norsworthy*, 266 Ga. App. 469, 470, 597 S.E.2d 421, 424 (2004).  "[U]nless [Mace] has been commanded—by law or by the policy or directive of [his] employer—to do a *particular thing*, [he] is still engaged in the performance of discretionary function."  *Barnett*, 302 Ga. at 848-49, 809 S.E.2d at 816.

For example, in *Glass*, the Georgia Court of Appeals reversed the trial court's grant of summary judgment on official immunity grounds because some evidence suggested the work detail supervisor claiming official immunity failed to follow a departmental policy when an inmate's tractor became stuck while cutting grass.  311 Ga. App. at 575, 716 S.E.2d at 621.  Under that unwritten policy, "if a tractor became stuck in a ditch while cutting grass, the work detail supervisor was to contact the work camp and request that a service truck be dispatched to pull the tractor out."  *Id.* at 564, 716 S.E.2d at 614.  Rather than request a service truck, the work detail supervisor attempted to free the stuck tractor with another tractor that was already on scene.  *Id.* at 565, 716 S.E.2d at 615.  That didn't go well and the inmate was killed by flying debris.

*Id.* Because a factual dispute existed "over whether the County had an established departmental policy requiring [the supervisor] to contact the work camp and request a service truck when a tractor became stuck," the Court of Appeals reversed. *Id.* at 576, 716 S.E.2d at 622.

Unlike in *Glass*, here it is undisputed that the County had no policies or directives, written or unwritten, that provided Mace with specific instructions on how to maneuver the motor grader to allow traffic to pass. Doc. 18-1 ¶¶ 6-7. In his deposition, Mace asserted "[Houston County] don't tell me what to do. I look back, I got too many cars, I get off the road." Doc. 18-7 at 36: 7-12. In other words, Mace made a judgment call. That conduct falls well within the protection afforded by official immunity. Accordingly, the defendants' motion for summary judgment (Doc. 18) as to Mace is **GRANTED**.

**B. The County Has Waived Sovereign Immunity**

Two Georgia statutes govern a county's waiver of sovereign immunity in cases that involve motor vehicle negligence: O.C.G.A. § 36-91-1 *et seq.* and O.C.G.A. § 33-24-51. In *Gates v. Glass*, the Georgia Supreme Court addressed the interplay of the two statutory provisions when it considered whether "the definition of 'any motor vehicle' in O.C.G.A. § 33-24-51(a) continues to be the broader definition of the term provided for in prior case law, notwithstanding the 2002 passage of O.C.G.A. § 36-92-1." 291 Ga. at 350, 729 S.E.2d at 362. The court reasoned that:

> An examination of O.C.G.A. § 36-92-1 *et seq.*, as well as the earlier and revised versions of O.C.G.A. § 33-24-51(a) and (b), demonstrates an intent on the part of the legislature to create a two-tier scheme within which local governments are deemed to have waived sovereign immunity with regard to accidents arising from the operation of their motor vehicles. The first tier, established under O.C.G.A. § 36-92-1 *et seq.*, requires local entities to waive sovereign immunity—up to

> certain prescribed limits—for incidents involving motor vehicles regardless of whether they procure automobile liability insurance. The second tier, enacted by O.C.G.A. § 33-24-51(b), and as revised in 2002, provides for the waiver of sovereign immunity to the extent a local entity purchases liability insurance in an amount exceeding the limits prescribed in O.C.G.A. § 36-92-2.

*Id.* at 351, 729 S.E.2d at 363. Simply put, O.C.G.A. § 36-92-1 *et seq*. and O.C.G.A. § 33-24-51 are different statutory schemes, and different rules necessarily apply. Because O.C.G.A. § 33-24-51 does not define "any motor vehicle," the Georgia Supreme Court reasoned that the broader definition controlled, notwithstanding the more restrictive definition of "motor vehicle" found in O.C.G.A. § 36-92-1(6). *Id.* at 351, 729 S.E.2d at 362. Had the legislature intended to graft the narrow definition of § 36-92-1(6) onto § 33-24-51, the court reasoned "it would have done so explicitly." *Id.* at 353, 729 S.E.2d at 363 (quoting *Georgia Dept. of Revenue v. Owens Corning*, 283 Ga. 489, 490, 660 S.E.2d 719 (2008)).

Here, the parties agree that O.C.G.A. § 36-92-1 *et seq*. is inapplicable because a "motor grader" is not a covered vehicle under that statute. Docs. 18-2 at 9-10; 20 at 7. Thus, O.C.G.A. § 33-24-51 is the only potentially applicable waiver of sovereign immunity available to Hobbs. Nonetheless, the County argues that because the plain text of O.C.G.A. § 33-24-51 states "[t]he sovereign immunity of local government entities for a loss arising out of claims for the negligent use of a covered motor vehicle is waived as provided in Code Section 36-92-2," and in turn, O.C.G.A. § 36-92-2(b) provides sovereign immunity "is waived only to the extent and in the manner provided in this chapter and *only with respect to actions brought in the courts of this state*," the County retains sovereign immunity when suit is brought in federal as opposed to state court. Docs. 18-2 at 12-13; 22 at 6-9. The County's argument misses the mark.

In interpreting a statute, the Court "is not authorized to disregard any of the words [used therein] unless the failure to do so would lead to an absurdity manifestly not intended by the legislature." *Chase v. State*, 285 Ga. 693, 695, 681 S.E.2d 116, 118 (2009) (quoting *Labovitz v. Hopkinson,* 271 Ga. 330, 336, 519 S.E.2d 672 (1999)). In full, O.C.G.A. § 33-24-51(b) provides:

> The sovereign immunity of local government entities for a loss arising out of claims for the negligent use of a covered motor vehicle is waived as provided in Code Section 36-92-2.  Whenever a municipal corporation, a county, or any other political subdivision of this state shall purchase the insurance authorized by subsection (a) of this Code section to provide liability coverage for the negligence of any duly authorized officer, agent, servant, attorney, or employee in the performance of his or her official duties in an amount greater than the amount of immunity waived as in Code Section 36-92-2, its governmental immunity shall be waived to the extent of the amount of insurance so purchased.  Neither the municipal corporation, county, or political subdivision of this state nor the insuring company shall plead governmental immunity as a defense; and the municipal corporation, county, or political subdivision of this state or the insuring company may make only those defenses which could be made if the insured were a private person.

O.C.G.A. § 33-24-51(b).  Put differently, § 33-24-51(b) does not expressly define when sovereign immunity has been waived by reference to O.C.G.A. § 36-92-2 as the County contends, but rather acknowledges § 36-92-2 as the first tier of a two-tier waiver scheme.  *Gates*, 291 Ga. at 351, 729 S.E.2d at 363.

In *Tift County School District v. Martinez*, the Georgia Court of Appeals makes this distinction clear.  331 Ga. App. 423, 771 S.E.2d 117 (2015).  There, the school district pointed to O.C.G.A. § 36-92-1(3), "which explicitly excludes local school systems from the definition of 'local government entities,' thereby exempting local school systems such as the [d]istrict from the waiver of immunity in O.C.G.A. § 36-92-2." *Id.* at 427, 771 S.E.2d at 120.  Because O.C.G.A. § 33-24-51(b) refers to the waiver in O.C.G.A. § 36-92-2, the district argued it was likewise excluded from the waiver in

O.C.G.A. § 33-24-51(b). *Id.* Citing *Gates*, the Georgia Court of Appeals disagreed. The school district was correct that there was no waiver of immunity for school districts under the first tier—O.C.G.A. § 36-92-1 *et seq.*—but the district was wrong about the second tier—O.C.G.A. § 33-24-51(b). *Id.* at 428, 771 S.E.2d at 121. Because the phrase "[a] municipal corporation, a county, or any other political subdivision of this State," found in the second sentence of O.C.G.A. § 33-24-51(b), was different from and "more inclusive" than a different waiver for "local government entities" contained in the first sentence of OCGA § 33-24-51(b), the Georgia Court of Appeals held O.C.G.A. § 33-24-51(b) "explicitly provides for a waiver of immunity to the extent that a local entity purchases motor vehicle insurance greater than the waiver … provided in O.C.G.A. § 36-92-1," notwithstanding the fact that the school district was exempt from waiver under O.C.G.A. § 36-92-2. *Id.*

In other words, the school district in *Tift County* "overlook[ed] plain distinctions in the language of O.C.G.A. § 33-24-51(b) and misconstrue[d] the statutory scheme." *Id.* at 427, 771 S.E.2d at 120. Houston County makes the same mistakes. Although O.C.G.A. § 33-24-51(b) references § 36-92-2, it only does so to make clear that at the very least, the sovereign immunity of local government entities is waived to the extent prescribed in § 36-92-2, irrespective of whether that local government entity has purchased insurance. If a "municipal corporation, a county, or any other political subdivision of this State" purchases insurance, the second tier is triggered, which—depending on the terms of the coverage agreement—can waive sovereign immunity in excess of the automatic waiver provided for in § 36-92-2.[5] O.C.G.A. § 33-24-51(b)-(c).

---

[5] "While a municipality's sovereign immunity for negligent use of a covered motor vehicle is waived automatically up to the limit set forth in O.C.G.A. § 36-92-2(a), a municipality's waiver of sovereign

Moreover, once insurance is purchased, O.C.G.A. § 33-24-51(b) expressly states that "[n]either the municipal corporation, county, or political subdivision of this state nor the insuring company shall plead governmental immunity as a defense; and the municipal corporation, county, or political subdivision of this state or the insuring company may make only those defenses which could be made if the insured were a private person." "It is elementary that '[i]n all interpretations of statutes, the courts shall look diligently for the intention of the General Assembly.'" *Chase*, 285 Ga. at 695, 681 S.E.2d at 118 (quoting O.C.G.A. § 1-3-1(a)). Here, it was clearly the intent of the Georgia legislature to establish a less stringent waiver scheme once insurance was purchased that covered the claim at issue.[6] Accordingly, the defendants' motion for summary judgment (Doc. 18) as to the County is **DENIED**.

## IV. CONCLUSION

For the reasons discussed above, the defendants' motion for summary judgment (Doc. 18) is **GRANTED in part** and **DENIED in part**. Mace is entitled to official immunity, and Hobbs's claims against him are **DISMISSED**. Because the County's

---

immunity based on the purchase of insurance under both … O.C.G.A. §§ 36-92-2(d) and 33-24-51(b) and (c) is determined by examining whether the insurance policy actually covers the claim at issue, and to what limit." *Atl. Specialty Ins. Co. v. City of Coll. Park*, 313 Ga. 294, 304-05, 869 S.E.2d 492, 500 (2022). Here, the County does not contend Hobbs' claims fall outside the scope of its coverage agreement (Doc. 18-5), only that "there is no waiver of sovereign immunity because Plaintiff filed suit in federal court as opposed to a court of the State of Georgia." Doc. 18-2 at 11. For the reasons discussed, that argument fails.

[6] While not dispositive, the Court notes claims are frequently raised in federal court against municipal corporations, counties, or other political subdivisions of the state pursuant to the limited waiver of sovereign immunity afforded by O.C.G.A. § 33-24-51. *E.g., Brown v. Fluellen*, 564 F. Supp. 3d 1308 (N.D. Ga. 2021); *Bryant v. Harris Cnty.*, Georgia, 2018 WL 5316359 (M.D. Ga. Oct. 26, 2018); *Butler v. Gwinnett Cnty., Georgia*, 2016 WL 10649204 (N.D. Ga. June 3, 2016); *Roelle v. Cobb Cnty. Sch. Dist.*, 2014 WL 4457235 (N.D. Ga. Sept. 10, 2014); *FCCI Ins. Co. v. McLendon Enterprises, Inc.*, 2013 WL 6731420, (S.D. Ga. Dec. 19, 2013); *Fitzgerald v. U.S. Exp., Inc.*, 2011 WL 233436 (N.D. Ga. Jan. 21, 2011).

waiver of sovereign immunity pursuant to O.C.G.A. § 33-24-51 is not limited to actions brought in state court, the defendants' motion as to the County is **DENIED**.

**SO ORDERED**, this 27th day of October, 2022.

S/ Marc T. Treadwell
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT